COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Haley and Alston
Argued at Alexandria, Virginia


RANDY NICHOLAS PRESSLEY

                                                                OPINION BY
v.        Record No. 0181-08-4                          JUDGE ROSSIE D. ALSTON, JR.
                                                                JULY 28, 2009
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                Kathleen H. MacKay, Judge

            Teresa E. McGarrity, Senior Assistant Public Defender (Office of the
            Public Defender, on briefs), for appellant.

            Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
            Attorney General, on brief), for appellee.


        Randy Nicholas Pressley (appellant) appeals his jury trial conviction for carjacking in

violation of Code § 18.2-58.1.[1]  On appeal, appellant contends the evidence was insufficient to

support his conviction, because the evidence failed to prove the intentional seizure of a motor

vehicle by means of "assault or otherwise putting a person in fear of serious bodily harm."  For

the reasons stated below, we affirm appellant's conviction.

                                    I.  BACKGROUND

        "On review of a challenge to its sufficiency, we view the evidence in the light most

favorable to the Commonwealth, the party prevailing below, and grant to it all reasonable inferences

fairly deducible therefrom."  Nolen v. Commonwealth, 53 Va. App. 593, 595, 673 S.E.2d 920, 921

(2009).  So viewed, the record shows that on March 12, 2006, the victim, Mohammad Siddique,

---

        [1] Appellant was also convicted of robbery; this conviction is not the subject of this
appeal.

was employed as a pizza deliveryman by Pizza Boli. That evening, Siddique was delivering a pizza to a Main Street address in Fairfax County. He parked his vehicle, a Nissan Altima, along the side of the road, exited the vehicle, left the pizza in the passenger seat, and walked into the street to confirm the building's address prior to delivering the pizza. It was dark outside, but the sidewalk was partially lit. As Siddique was returning to his car, Siddique saw appellant, who wore a mask that covered the lower half of his face, leaving his eyes exposed. Appellant asked Siddique if he was the "pizza man." Siddique denied that he was the pizza deliveryman, because he was "a little afraid" of appellant due to the fact that appellant was wearing a mask.

Siddique walked very quickly toward his car. He had not had the opportunity to open the door when appellant ran toward Siddique "with a great degree of speed." Appellant gestured toward Siddique's shirt, which had Pizza Boli's logo on it, and stated, "You are the pizza man." Siddique did not respond, and appellant asked, "Where is my pizza?" Siddique told appellant the pizza was in the car. Appellant said, "Give me that pizza." Siddique said that he would give appellant the pizza if appellant moved to the other side of the car. Instead, appellant opened the driver's side door, leaned into the car, and retrieved the pizza from the passenger seat.

Appellant then said to Siddique, "Give me money." Siddique gave appellant all of the money he had in his pocket—approximately $50 to $70. Siddique testified that he surrendered his money because he was afraid, as appellant was wearing a mask and had already taken Siddique's pizza.

Next, appellant demanded Siddique's cellular phone. Siddique lied, and stated that he did not have one. Appellant then demanded Siddique's car keys. Siddique responded, "Why should I give you the keys? I've given you the pizza. I've given you the money?" Two to three times, Siddique refused to give appellant the car keys. He asked appellant to "take the pizza, take the money, and go . . . ." In reply, appellant said very firmly to Siddique, "Hurry up, man, give me the

keys." Siddique then relinquished his keys, because "[appellant] kept asking [Siddique] and [Siddique] was scared." Throughout the encounter, Siddique believed that appellant "could do anything," including assault Siddique, if Siddique did not comply with appellant's demands.

Siddique was standing on the sidewalk when appellant drove away in his vehicle. During the entire encounter, appellant directed no explicit threats of serious bodily harm at Siddique, nor did he indicate that he possessed a weapon.

The Fairfax County Police Department later found Siddique's vehicle near the apartment building where appellant's mother lived. The pizza order that Siddique attempted to deliver had been made from the number belonging to appellant's mother's cell phone. When the police inspected the appellant's mother's apartment, they found a Pizza Boli box; it was the box that Siddique had tried to deliver earlier in the evening. Also, a neoprene mask belonging to appellant was recovered; it was a half-mask that covered the lower half of the wearer's face.

At the conclusion of the Commonwealth's case at trial, appellant moved to strike the evidence on the grounds that the Commonwealth had not proved that the appellant had the intent to permanently or temporarily deprive Siddique of possession or control of the vehicle by means of assault or otherwise putting Siddique in fear of serious bodily harm, as required by Code § 18.2-58.1. The court denied the motion. During the argument of the motion, the trial court stated that it found the appellant's actions to be sufficient to put someone in fear of serious bodily harm: "[Appellant]'s got a mask on. [Appellant] asks [Siddique] for the pizza. [Siddique] says, 'I'm not the pizza guy.' [Appellant] walks away and then comes back at a fast pace and with a mask on. I can't imagine a more difficult situation." The trial court then emphasized that it found the mask-wearing and the fact that appellant ran toward Siddique as compelling evidence that he intimidated Siddique.

Appellant renewed his motion to strike at the close of all evidence. The trial court also denied this motion. The jury convicted the appellant of carjacking, in violation of Code § 18.2-58.1. Appellant now appeals that conviction.

## II. ANALYSIS

A review of the sufficiency of the evidence "involves assessment by the courts of whether the evidence adduced at trial could support *any* rational determination of guilt beyond a reasonable doubt." United States v. Powell, 469 U.S. 57, 67 (1984) (emphasis added). See also McMillan v. Commonwealth, 277 Va. 11, 15, 671 S.E.2d 396, 397 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 906 (2009) (*en banc*). The judgment of the trial court should be affirmed, "'unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Brown v. Commonwealth, 37 Va. App. 507, 519, 559 S.E.2d 415, 421 (2002) (quoting Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Appellant contends the evidence was insufficient to convict him of violating Code § 18.2-58.1, which defines the elements of carjacking as follows:

> As used in this section, *"carjacking"* means the intentional seizure or seizure of control of a motor vehicle of another with intent to permanently or temporarily deprive another in possession or control of the vehicle of that possession or control by means of partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever.

Code § 18.2-58.1(B). Appellant contends that there is no evidence that appellant obtained the car keys by assault or by placing Siddique in fear of serious bodily harm.

- 4 -

In interpreting Code § 18.2-58.1, this Court has noted that "'[c]arjacking is a species of robbery.'" Spencer v. Commonwealth, 42 Va. App. 443, 448, 592 S.E.2d 400, 402 (2004) (quoting Sanchez v. Commonwealth, 32 Va. App. 238, 241, 527 S.E.2d 461, 463 (2000)). Thus, in cases construing Code § 18.2-58.1, this Court has considered case law involving robbery. See id.; Bell v. Commonwealth, 21 Va. App. 693, 699, 467 S.E.2d 289, 292 (1996). In so doing, this Court has used the term "intimidation" when analyzing the carjacking element requiring a taking "by assault or by otherwise placing a person in fear of serious bodily harm." Spencer, 42 Va. App. at 448, 592 S.E.2d at 402 (holding that defendant forced the victim to relinquish possession of her vehicle through violence and intimidation); Bell, 21 Va. App. at 699, 467 S.E.2d at 292 (holding that the defendant forced the victim to relinquish her vehicle keys through violence and intimidation).

> Intimidation is defined as "unlawful coercion; extortion; duress; putting in fear." "To take or attempt to take, 'by intimidation' means willfully to take, or attempt to take, by putting in fear of bodily harm." Intimidation results when the words or conduct of the accused exercise such domination and control over the victim as to overcome the victim's mind and overbear the victim's will, placing the victim in fear of bodily harm.

Anderson v. Commonwealth, 52 Va. App. 501, 507, 664 S.E.2d 514, 517 (2008) (quoting Bivins v. Commonwealth, 19 Va. App. 750, 752-53, 454 S.E.2d 741, 742 (1995) (citations omitted)).

> [W]here the victim's fear results from the taking itself, the taking is not accomplished through intimidation. . . . Whether the subjective fear induced by the accused's actions facilitated the taking or merely resulted from the taking will depend on the facts of the individual case. The intent of the accused, if it is merely to take, while not determinative, is a factor in this calculus.

Id. (quoting Bivins, 19 Va. App. at 753-54, 454 S.E.2d at 743) (citations omitted). Where the defendant's conduct amounts to intimidation or "*is reasonably calculated to produce fear*," see United States v. Amos, 566 F.2d 899, 901 (4th Cir. 1977) (emphasis added), and is concomitant

with a taking, the evidence is sufficient to support a conviction for robbery.  See Mason v.

Commonwealth, 200 Va. 253, 256, 105 S.E.2d 149, 151 (1958).

Appellant argues that the Commonwealth failed to prove that he took Siddique's car by

means of violence, threat, or putting him in fear of serious bodily harm.  Appellant argues that

because he obtained the keys through repeated requests for the keys, and, according to appellant, did

not commit any violent act or make a threat of violence, appellant did not obtain the vehicle keys

through violence or intimidation.  Appellant also argues that Siddique's repeated refusals to

relinquish his keys indicated that his will was not overborne by fear of serious bodily injury when

he did finally surrender his keys.  We disagree.

"Threats of violence or bodily harm are not an indispensable ingredient of intimidation.  It is

only necessary that the victim actually be put in fear of bodily harm by the willful conduct or words

of the accused."  Harris v. Commonwealth, 3 Va. App. 519, 521, 351 S.E.2d 356, 357 (1986) (citing

Falden v. Commonwealth, 167 Va. 549, 554, 189 S.E. 329, 331 (1937)); accord United States v.

Gilmore, 282 F.3d 398, 403 (6th Cir. 2002) (holding that unequivocal written and verbal demands

for money to bank tellers were sufficient basis for a finding of intimidation); State v. Edmondson,

231 S.W.3d 925 (Tenn. 2007) (finding that the defendant knowingly obtained the victim's keys

through intimidation when he approached her on the sidewalk near her car, and stated, "Give me

your money and your keys"); Cf. State v. Moore, 4 P.3d 1141 (Kan. 2000) (holding that the

defendant intended to carjack the victim through intimidation, when defendant approached the

victim in a remote parking lot at night and demanded her car keys, while two of his acquaintances

watched the exchange and appeared ready to assist him in taking possession of the victim's car, and

that a reasonable person would not surrender her car keys in the above circumstances unless she was

intimidated).  The fear of bodily harm, however, must result from the words or conduct of the

accused rather than the temperamental timidity of the victim. Harris, 3 Va. App. at 521, 351 S.E.2d at 357.

Here, appellant created an atmosphere of intimidation. The victim was alone at night on a partially lit street. A man, wearing a mask that obscured the lower half of his face, ran toward the victim with "a great degree of speed" and demanded his possessions. Using intimidating conduct and words, this same masked man robbed the victim of a pizza and his money.[2] This atmosphere of intimidation is further underscored by appellant's persistent efforts to press the victim for his keys, which culminated in appellant's final firm demand that the victim "hurry up, . . . [and] give [appellant] the keys." The victim handed over his keys, because he was afraid and believed appellant "could do anything."

The jury, who had the opportunity to observe the witnesses and weigh the evidence, was entitled to infer that the victim surrendered his vehicle because he was intimidated. It was reasonable for the jury to conclude beyond a reasonable doubt that the victim was intimidated after a masked man, a stranger to the victim, demanded the victim give him the pizza, the victim's money, the victim's cell phone, and the keys to the victim's car. Accordingly, the factfinder was entitled to infer, based upon the totality of the circumstances, that the appellant's conduct and words exercised such domination and control over the victim as to overcome the victim's mind and overbear the victim's will, placing the victim in fear of bodily harm, and inducing him to surrender his vehicle to the appellant.

Accordingly, appellant's conviction is affirmed.

Affirmed.

---

[2] As stated previously, the jury found the appellant guilty of robbery, and as such, it is the law of the case that appellant took the pizza and the victim's money by "intimidation or the threat of serious bodily harm," as provided in the jury instruction.