COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Petty and Beales
Argued at Chesapeake, Virginia

EDWARD JOHNSON

                                                                OPINION BY
v.   Record No. 2091-10-1                          JUDGE D. ARTHUR KELSEY
                                                                AUGUST 2, 2011

COMMONWEALTH OF VIRGINIA

              FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                          Wilford Taylor, Jr., Judge

          Charles E. Haden for appellant.

          Benjamin H. Katz, Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.

       The trial court convicted Edward Johnson of maiming by mob, Code § 18.2-41,

conspiracy to maim by mob, Code §§ 18.2-22, 18.2-41, and participating in a criminal street

gang, Code § 18.2-46.2.  On appeal, Johnson challenges the sufficiency of the evidence and

claims the trial court erred in admitting certain exhibits.  We affirm Johnson's convictions,

finding his arguments either lacking in merit or procedurally defaulted.

                                          I.

       On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

       In addition, "an appellate court's 'examination is not limited to the evidence mentioned

by a party in trial argument or by the trial court in its ruling.'"  Perry v. Commonwealth, 280 Va.

572, 580, 701 S.E.2d 431, 436 (2010) (quoting <u>Bolden v. Commonwealth</u>, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, "an appellate court must consider all the evidence admitted at trial that is contained in the record." <u>Id.</u> (quoting <u>Bolden</u>, 275 Va. at 147, 654 S.E.2d at 586); <u>see also</u> <u>Hamilton v. Commonwealth</u>, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010).

Viewed from this perspective, the record shows a fight broke out at a club in Hampton one night in April 2009. One of the combatants, a young man known as "Akeem," was known to be a member of the "three-six" gang. When club security sprayed mace to break up the fight, Akeem and several fellow gang members fled outside.

Clyde Bell was with one of the young men who had fought against Akeem. As the group dispersed, he also went outside. Standing outside the club, Bell overheard one of the gang members ask, "Where them bitches at?" Bell called a friend inside the club and said, "I'm about to get jumped." Moments later, Akeem and approximately six other gang members approached Bell. Johnson was one of them. Bell asked, "So you-all going to jump me, right?" As Akeem advanced toward Bell, Bell struck Akeem in an effort to defend himself. The effort failed. As Akeem began to beat Bell, the three-six gang members in the group joined one by one in the beating, which lasted about five minutes.

During the sustained assault, Bell heard several of the attackers say, "three-six, bitch." A witness who knew Johnson saw him "in the middle of the fight" and "throwing punches" at Bell during the mêlée. The witness said he was "a hundred-percent sure" Johnson was "involved in the fight." After the beating ended, the three-six gang members walked away. Bell heard them say "Who next?" and "Where the rest of them at?" The beating left Bell with two broken vertebrae in his lumbar spine.

A grand jury indicted Johnson for participating in a criminal street gang, maiming by mob, conspiracy to maim by mob, and robbery. At trial, a detective trained in investigating

criminal street gangs testified as an expert concerning the 36th Street Bang Squad — known colloquially as the "three-six" gang. The detective described the unique hand signs and symbols associated with the three-six gang. He also explained in detail the gang's violent reputation and its association with other criminal street gangs like the "Bloods" and the "G-Shine" organizations.

Over Johnson's objection, the trial court admitted into evidence a 2009 conviction order finding Johnson guilty of two violent felonies. The trial court also admitted into evidence a plea agreement and sentencing order showing Jumar A. Turner, one of the participants in the beating, was found guilty of committing a violent felony earlier in 2009. Earlier in the trial, Johnson's counsel stated he would object to the Turner conviction, but when the prosecutor offered it into evidence, Johnson's counsel raised no objection. Upon the close of the evidence, the trial court denied Johnson's motion to strike and found him guilty of maiming by mob, conspiracy to maim by mob, and participating in a criminal street gang. The court acquitted Johnson of the robbery charge.

## II.

On appeal, Johnson challenges the sufficiency of the evidence for each of the convicted offenses. He also argues that, even if the evidence is sufficient, the case must still be remanded for a new trial because the trial court erroneously admitted into evidence his prior conviction and Turner's plea agreement and sentencing order.

### A. SUFFICIENCY OF THE EVIDENCE

We examine a trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280,

- 3 -

282 (2009) (emphasis in original) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979)).

Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to

the prosecution, whether *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." <u>Sullivan v. Commonwealth</u>, 280 Va. 672, 676, 701 S.E.2d

61, 63 (2010) (emphasis added) (citing <u>Jackson</u>, 443 U.S. at 319). We are "not permitted to

reweigh the evidence," <u>Nusbaum v. Berlin</u>, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007),

because appellate courts have no authority "to preside *de novo* over a second trial," <u>Haskins v.</u>

<u>Commonwealth</u>, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

In a bench trial, a trial judge's "major role is the determination of fact, and with

experience in fulfilling that role comes expertise." <u>Id.</u> (citation omitted). If the evidence passes

the sufficiency test, "the reviewing court is not permitted to substitute its own judgment, even if

its opinion might differ from the conclusions reached by the finder of fact at the trial." <u>Courtney</u>

<u>v. Commonwealth</u>, 281 Va. 363, 368, 706 S.E.2d 344, 347 (2011) (citation omitted); <u>see</u> <u>also</u>

<u>Holloway v. Commonwealth</u>, 57 Va. App. 658, 664, 705 S.E.2d 510, 513 (2011) (*en banc*).

### 1. Maiming by Mob

Code § 18.2-41 provides that any "person composing a mob which shall maliciously or

unlawfully shoot, stab, cut or wound any person, or by any means cause him bodily injury with

intent to maim, disable, disfigure or kill him, shall be guilty of a Class 3 felony." The statutory

text makes clear

> malicious wounding by mob, as set out in Code § 18.2-41, is a
> different offense from malicious wounding as codified in Code
> § 18.2-51. Malicious wounding by mob does not require the
> Commonwealth to prove malice because it defines the crime as
> "maliciously or unlawfully [wounding] any person . . . with intent
> to maim, disable, disfigure or kill him . . . ." Code § 18.2-41. The
> disjunctive term "or," which separates the terms "maliciously" and
> "unlawfully," indicates that Code § 18.2-41 only requires proof
> that the wounding was unlawful. Code § 18.2-41 therefore

- 4 -

> criminalizes different conduct from malicious wounding under
> Code § 18.2-51.

Paiz v. Commonwealth, 54 Va. App. 688, 698, 682 S.E.2d 71, 76 (2009) (alterations in original).

Under Code § 18.2-38, "[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person or an act of violence as defined in § 19.2-297.1, without authority of law, shall be deemed a 'mob.'" Thus,

> to sustain a conviction of maiming by mob under Code § 18.2-41, the evidence must establish that the accused was a member of a group composing a mob; that the mob caused the victim bodily injury; and that the mob acted with the malicious [or unlawful] intent "to maim, disable, disfigure or kill" the victim.

Commonwealth v. Leal, 265 Va. 142, 146, 574 S.E.2d 285, 287-88 (2003).

An otherwise lawful assembly of people can become a "mob" simply by adopting an unlawful intent to commit violence. See Harrell v. Commonwealth, 11 Va. App. 1, 7-8, 396 S.E.2d 680, 683 (1990). "Whether a group of individuals has been so transformed into a 'mob' depends upon the circumstances; no particular words or express agreements are required to effect a change in a group's purpose or intentions." Johnson v. Commonwealth, 58 Va. App. 303, 320, 709 S.E.2d 175, 184 (2011) (quoting Harrell, 11 Va. App. at 7-8, 396 S.E.2d at 683). "Events or emotionally charged circumstances suddenly may focus individuals toward a common goal or purpose without an express or stated call to join forces." Id. Because the "impulsive and irrational forces that may exist to transform peaceable assembly into mob violence are to be evaluated on a case-by-case basis," id., the determination is a question of fact for the factfinder.

The evidence showed a mob formed outside the club with the specific intent of committing violence. One of the mob's members voiced its collective question, "Where them bitches at?" — thereby signaling the mob's intent to find and assault those associated with the earlier fray. They found Bell, who had accompanied one of the men who had fought against Akeem. Apparently aware of what was about to happen, Bell asked rhetorically, "So you-all

going to jump me, right?"  The group then beat Bell for about five minutes, leaving him with two fractured vertebrae.  As they walked away, Bell heard them say "Who next?" and "Where the rest of them at?" — further confirming the collective violent intent of the mob.

Johnson claims the evidence, at most, shows he merely threw a few punches.  This assertion, whether true or not, misses the point.  "Every person composing a mob 'becomes criminally culpable even though the member may not have actively encouraged, aided, or countenanced the act.'"  Leal, 265 Va. at 147, 574 S.E.2d at 288 (quoting Harrell, 11 Va. App. at 8, 396 S.E.2d at 683); Abdullah v. Commonwealth, 53 Va. App. 750, 759, 675 S.E.2d 215, 219-20 (2009) (citation omitted).  "In other words, the statute imposes 'individual liability based on collective act and intent.'"  Paiz, 54 Va. App. at 697, 682 S.E.2d at 75 (quoting Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses 523 (2008-09 ed.)).  The duration of the beating and the "gravity of the victim's injuries inflicted by the mob," Leal, 265 Va. at 147, 574 S.E.2d at 288, demonstrate that the mob, which included Johnson, intended to seriously injure and maim Bell.

## 2.  Conspiracy to Maim by Mob

In his sufficiency argument, Johnson addresses in detail his challenge to the maiming-by-mob conviction, see Appellant's Br. at 28-32, but makes no argument specific to his conspiracy-to-maim-by-mob conviction, except for a single statement that he did not strike Bell and "never agreed," id. at 29, to do so.  With respect to the conspiracy conviction, Johnson implies, without expressly stating, that his conspiracy conviction should be overturned for the same reasons he advanced for overturning his maiming-by-mob conviction.  Having rejected Johnson's challenge to the maiming-by-mob conviction, we thus limit our review of his conspiracy conviction to his claim that he "never agreed" to strike Bell or anyone else.  Id.

"It is a rare case where any 'formal agreement among alleged conspirators' can be established." James v. Commonwealth, 53 Va. App. 671, 678, 674 S.E.2d 571, 575 (2009). Because "most conspiracies are 'clandestine in nature,'" id. (quoting 2 Wayne R. LaFave, Substantive Criminal Law § 12.2(a), at 266 (2d ed. 2003)), conspiracy law does not require proof of an "explicit agreement," Jones v. Commonwealth, 279 Va. 295, 301, 687 S.E.2d 738, 741 (2010). A conspiratorial agreement "often may only be established by circumstantial and indirect evidence including the overt actions of the parties." Id. (citing Floyd v. Commonwealth, 219 Va. 575, 580-81, 249 S.E.2d 171, 174 (1978)).

Here, a reasonable factfinder could infer from the circumstances and the "overt actions of the parties," id., that the mob did not form spontaneously, but rather, as a result of a collective, agreed upon effort to punish anyone involved in the earlier fight inside the club. One member of the group all but announced the group's purpose by asking, "Where them bitches at?" After the five-minute beating of Bell, another member of the mob confirmed the group's continuing purpose by asking, "Who next?" and "Where the rest of them at?" Because one eyewitness placed Johnson "in the middle of the fight," the trial court could reasonably infer Johnson fully joined in the collective decision to target the participants in the club fray and anyone who may have accompanied them.

### 3. Participating in a Criminal Street Gang

At trial, Johnson challenged the sufficiency of the evidence supporting the gang charge on the ground that the evidence did not prove the beating of Bell was "part of, or for the benefit of a street gang." Counsel specifically disclaimed any challenge to the existence of the gang. "I'm not going to go into the evidence," counsel advised the court, "as to whether or not it may rise to the level of a criminal street gang." Counsel limited his argument to the assertion that the beating was "not for the benefit of, or at the direction of, or in association with that gang." "That

- 7 -

is a requirement for this," counsel concluded, "and this is where the prosecution's evidence falls down with respect to this particular crime."

On appeal, Johnson raises for the first time a sufficiency challenge to the existence of a "criminal street gang" under Code § 18.2-46.1. We do not address this question. Applying Rule 5A:18, an "appellate court, in fairness to the trial judge, should not . . . put a different twist on a question that is at odds with the question presented to the trial court." Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999). Under settled principles, the "same argument must have been raised, with specificity, at trial before it can be considered on appeal." Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004); see also Riner v. Commonwealth, 268 Va. 296, 325, 601 S.E.2d 555, 571 (2004). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd by unpublished order, No. 040019 (Va. Oct. 15, 2004).[1]

Johnson claims he should be excused for not raising the point at trial because the best authority supporting it, Taybron v. Commonwealth, 57 Va. App. 470, 703 S.E.2d 270 (2011), was decided after his conviction and either effected a "change in the law" or created "new law" in the Commonwealth. See Oral Argument Audio at 5:07 to 5:09, 9:49 to 9:56. We do not believe Taybron changed existing law or created new law.[2] But even if it did, the "perceived

_____

[1] See also W. Alexandria Prop., Inc. v. First Va. Mortg. & Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court."); Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that an appellate court will not consider an argument on appeal different from one raised at trial even if it is related to the same issue).

[2] Taybron held "*only that*, *in this case*, the evidence fails to establish that appellant, a member of the 36th Street Bang Squad, was a member of the national Bloods or some other gang organization to which Turner and King also belonged." 57 Va. App. at 485 n.6, 703 S.E.2d at 278 n.6 (emphasis added).

futility of an objection does not excuse a defendant's procedural default at trial." Commonwealth v. Jerman, 263 Va. 88, 94, 556 S.E.2d 754, 757 (2002) ("Our conclusion is not altered by the fact that the [old rule] was still in effect on the date of [defendant's] trial."); see also McGhee v. Commonwealth, 280 Va. 620, 625, 701 S.E.2d 58, 60-61 (2010); Riner v. Commonwealth, 40 Va. App. 440, 456, 579 S.E.2d 671, 679 (2003), aff'd, 268 Va. 296, 601 S.E.2d 555 (2004); Snurkowski v. Commonwealth, 2 Va. App. 532, 536, 341 S.E.2d 667, 669 (1986).

## B. EVIDENTIARY ERRORS

On appeal, Johnson contends the trial court erred in admitting into evidence Turner's plea agreement and sentencing order. At trial, however, Johnson did not object to the evidence at the time of its admission and, thus, the trial court never ruled on the issue. "To be timely, an objection to the admissibility of evidence must be made when the occasion arises — that is, when the evidence is offered, the statement made or the ruling given." Zook v. Commonwealth, 31 Va. App. 560, 568, 525 S.E.2d 32, 35-36 (2000) (quoting Harward v. Commonwealth, 5 Va. App. 468, 473, 364 S.E.2d 511, 513 (1988)).

Johnson seeks to excuse the default because, earlier in the trial, his trial counsel stated he would object when the evidence was later presented. Counsel never did object, however, and the trial court properly refrained from *sua sponte* raising the objection for him. Johnson also seeks to apply the "ends of justice" exception of Rule 5A:18 by asserting the court probably would have sustained the objection under the reasoning we later adopted in Taybron. We find neither assertion sufficient to excuse the default.

No explanation is given for counsel's failure to object at the time the trial court admitted the evidence. Therefore, no "good cause" under Rule 5A:18 has been proffered, much less proven. With respect to Johnson's Taybron argument, the ends-of-justice exception to waiver does not apply simply because an appellant asserts a winning argument on the waived issue. If

that were so, procedural default "would never apply, except when it does not matter." Delaney

v. Commonwealth, 55 Va. App. 64, 69, 683 S.E.2d 834, 836 (2009). Considerably more must be

shown before that narrow exception comes into play. Nothing in the circumstances of this case

rises to that level.[3]

Johnson also contends the trial court erred by admitting evidence of his own 2009

conviction order finding him guilty of malicious wounding and maiming by mob.[4] Because

these convictions did not relate to "gang activity or the activities of the 36th Street Bang Squad,"

Johnson argues, "the evidence was irrelevant and should have been excluded." Appellant's Br.

at 37. We disagree. Code § 18.2-46.2(A) provides:

> Any person who actively participates in or is a member of a
> criminal street gang and who knowingly and willfully participates
> in any predicate criminal act committed for the benefit of, at the
> direction of, or in association with any criminal street gang shall be
> guilty of a Class 5 felony.

The crime thus involves two elements — status and conduct. While in the status of either an

active participant *or* a member in a criminal street gang, the defendant must participate in the

predicate criminal conduct related to any criminal street gang. A criminal street gang includes

> any ongoing organization, association, or group of three or more
> persons, whether formal or informal, (i) which has as one of its

---

[3] Johnson's failure to make a contemporaneous objection deprived "the opposing party," here the Commonwealth, of "the opportunity to meet the objection at that stage of the proceedings." Charles E. Friend, The Law of Evidence in Virginia § 8-3, at 290 (6th ed. 2003). While the duty to object is due to the trial court so that it knows the precise question it must decide, it "is also due to the party whose evidence is objected to . . . so that he may have an opportunity to remedy the defect pointed out, if possible, and have the case tried upon its merits." Id. at 290-91(quoting Jackson v. Chesapeake & Ohio Ry., 179 Va. 642, 651, 20 S.E.2d 489, 492-93 (1942)). For all we know, additional evidence was available to the prosecutor and could have been offered if Johnson's trial counsel had successfully objected at the time the exhibit was admitted into evidence. See Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) (noting "a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding" (citation omitted)).

[4] We recently affirmed these convictions in Johnson v. Commonwealth, 58 Va. App. 303, 709 S.E.2d 175 (2011).

primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name or identifying sign or symbol; and (iii) whose members *individually or collectively* have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more *predicate criminal acts*, at least one of which is an act of violence, provided such acts were not part of a common act or transaction.

Code § 18.2-46.1 (emphasis added).

The Commonwealth offered Johnson's prior felony conviction order to prove the predicate criminal "acts of violence" committed "individually or collectively" by members of the putative gang under Code § 18.2-46.1. See Code § 19.2-297.1(A)(i) (identifying malicious wounding and maiming by mob as "acts of violence"). Unlike the conduct element of the offense, the status element — active participation or membership in a criminal street gang — requires the application of Code § 18.2-46.1, which conspicuously omits any requirement that the predicate criminal acts be gang related.

Faithful to the textualist approach to statutory interpretation, we presume "the legislature 'chose, with care,' the specific words of the statute." Va. Emp't Comm'n v. Cmty. Alts., Inc., 57 Va. App. 700, 706, 705 S.E.2d 530, 533 (2011) (quoting Kane v. Szymczak, 41 Va. App. 365, 371, 585 S.E.2d 349, 352-53 (2003)). "Working from the statutory text, we strive to give that language a 'literal construction' unless doing so 'would involve a manifest absurdity.'" Id. (quoting Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 276, 590 S.E.2d 631, 638 (2004)); see also Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010) (restating "manifest absurdity" caveat).

Code § 18.2-46.1 does not require the predicate criminal act to be gang related. And we are unwilling to "judicially graft" such a requirement into the statute, Whitfield, 42 Va. App. at 280, 590 S.E.2d at 640, under the subtle "guise of judicial interpretation," Holly Hill Farm Corp. v. Rowe, 241 Va. 425, 431, 404 S.E.2d 48, 51 (1991). "We can only administer the law as it is

- 11 -

written." Uninsured Emp'rs Fund v. Wilson, 46 Va. App. 500, 506, 619 S.E.2d 476, 479 (2005) (quoting Coalter v. Bargamin, 99 Va. 65, 71, 37 S.E. 779, 781 (1901)).

Thus, the trial court did not err in admitting Johnson's earlier conviction order from 2009 to prove one of the predicate criminal "acts of violence" committed "individually or collectively" by members of the putative gang under Code § 18.2-46.1.[5]

### III.

In sum, Johnson's arguments either lack merit or are procedurally defaulted. For these reasons, we affirm his convictions of maiming by mob, conspiracy to maim by mob, and participating in a criminal street gang.

Affirmed.

---

[5] Johnson argues our conclusion conflicts with Phillips v. Commonwealth, 56 Va. App. 526, 537, 694 S.E.2d 805, 810 (2010). We do not see the conflict. Phillips held only that the "statute necessarily requires that the criminal acts establishing the existence of the criminal street gang occur *before*, not *contemporaneously* with, the offense for which the existence of the criminal street gang is required." Id. (emphasis in original). The criminal acts resulting in Johnson's 2009 convictions for malicious wounding and maiming by mob occurred on February 7, 2009. The charges in this case arose out of the beating of Bell on April 11, 2009.