UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Newport News, Virginia


JAHSEN HEARD

v.        Record No. 1576-16-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
JANUARY 23, 2018

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Charles E. Haden for appellant.

J. Christian Obenshain, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Jahsen Heard ("appellant") appeals his convictions for attempted carjacking, in violation

of Code §§ 18.2-58.1 and -26, conspiracy to commit carjacking, in violation of Code

§§ 18.2-58.1 and -22, and robbery, in violation of Code § 18.2-58.[1]  He argues that the trial court

erred in denying his motion to strike and motion to set aside the verdict because the evidence

was insufficient to prove the elements of the offenses beyond a reasonable doubt.[2]  For the

reasons that follow, we affirm the judgment of the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The indictment for attempted carjacking alleges that appellant "unlawfully and feloniously did attempt to carjack . . . in violation of [Code] §[§] 18.2-58.1 / 18.2-22."  The indictment should have stated that the attempt was made in violation of Code §§ 18.2-58.1 and -26.  An objection based upon such a defect in an indictment must be made by motion before pleading and at least seven days before trial.  Rule 3A:9; see also Stamper v. Commonwealth, 228 Va. 707, 713, 324 S.E.2d 682, 686 (1985).  We note that appellant made no such objection.

[2] Appellant's petition for appeal included two additional assignments of error.  Due to procedural deficiencies in appellant's petition, this Court did not review those assigned errors. Heard v. Commonwealth, 68 Va. App. 109, 803 S.E.2d 772 (2017).

# I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts [are] stated in the light most favorable to the Commonwealth, the prevailing party at trial." Scott v. Commonwealth, 292 Va. 380, 381, 789 S.E.2d 608, 608 (2016).

Around 6:00 a.m. on November 29, 2015, Roy Keddy was preparing to leave the Embassy Suites Hotel in Hampton and drive to his home in Connecticut. Keddy had just returned from a gas station, and as he drove slowly past the front of the hotel, a young man walked up to his car and asked for change. Keddy noticed two other young men nearby, "off on the side." After denying the man's request, Keddy drove around to the side of the hotel and parked. A minute or two later, as he prepared to program his GPS unit, Keddy looked up and saw the three men approaching his car. Keddy looked down, "and then the next thing I knew . . . the car door was opened and one [of the men] was standing right there in the car door."

The man standing in Keddy's door, who was wearing a white shirt, told him to get out of the car. When Keddy refused, he repeated his demand before grabbing Keddy by the wrist and trying to pull him from the car. Because Keddy was wearing his seatbelt, the man was unsuccessful. He also struggled with Keddy over the car keys. Keddy noticed that someone else had gotten into the back seat of his car. Although Keddy did not actually see the person, he "assumed that somebody was there" because he felt the seat move.

As the man standing in the car door grabbed a strap dangling from Keddy's keychain, Keddy glanced to the side and was struck in the face. He blacked out momentarily, and when he regained consciousness his keys were gone. Keddy began sounding the horn, and the three men ran away from the car.

Keddy continued sounding the horn for another minute or so. When no one responded to help him, he got out of his car, locked it, and went into the hotel lobby. There, he asked

someone to call 911.  Before his encounter with the three men, Keddy's cell phone had been in the cup holder in the center console of his car.  When he returned to his car from the hotel lobby, the phone was gone.

Officer Eugene Calloway of the Hampton Police Department investigated the reported offenses.  The morning of the incident he reviewed the hotel's security camera footage, which showed three individuals walking past the hotel in the direction of Keddy's car.

Officer O'Ruedas Marales of the Hampton Police Department was driving near an apartment complex a mile from the hotel that morning.  There, he saw three juvenile males who matched a description of suspects in an attempted carjacking and robbery.  Marales turned on his emergency lights, and when he did so, all three individuals began running away—one on his own, and the others together.  Marales chased and caught the suspect who ran away alone.  That suspect was later identified as Tykare Payne.  When Marales handcuffed Payne, a cell phone fell out of his sweatshirt pocket.  Keddy later identified the phone as the one that was taken from his car.

When Calloway learned that suspects were fleeing from Marales, he and other officers established a perimeter around the area where they thought the suspects would go.  Calloway saw two males, who matched the suspects' descriptions, running away from the direction of the hotel and toward a wooded area.  Calloway chased and caught one of the suspects, who was later identified as Zyan Johnson.  While returning to his patrol car, Calloway searched an area behind some townhomes.  Behind each was a patio surrounded by a picket fence with a gate, and one of the gates was slightly ajar.  When Calloway looked inside the partially open gate, he saw someone crouched on a patio.  That individual was later identified as appellant.  Appellant was wearing a black shirt, and a dark-colored hoodie was stuffed under a nearby chair.

Detective Steven Carpenter of the Hampton Police Department interviewed appellant after his arrest. After Carpenter advised appellant of his Miranda rights, appellant agreed to speak with him and told him he was "out at the Embassy Suites running cars." Appellant explained to Carpenter that "running cars" meant "[j]ust taking items out of . . . cars." Appellant was indicted for attempted carjacking, conspiracy to carjack, and robbery.

At trial, after the Commonwealth presented its evidence, appellant moved to strike the evidence on all three charges. The trial court denied the motion.

Johnson, who had entered Alford pleas to identical charges,[3] testified in appellant's defense. He stated that he was at the Embassy Suites on November 29, 2015, with appellant and Payne. According to Johnson, the three men were there to visit a friend who was staying at the hotel. When they saw a man sitting by himself in a car, Johnson decided to take the man's car. Johnson testified that he did not discuss this plan with his companions. He stated that he walked over, opened the car door, and tried to take the keys from Keddy while appellant and Payne stood in front of the car. Johnson admitted that he punched Keddy and ran when Keddy began sounding his horn. He noted that his companions also ran from the car. Johnson denied that anyone besides the man was ever in the car. On cross-examination, Johnson stated that he had lied to Detective Carpenter when he told them he was "running cars," in order to "cover up for what really happened."

The jury convicted appellant on all charges. Appellant moved the court to set aside the verdict. The trial court reserved judgment and invited the parties to file written motions prior to

---

[3] A defendant who enters an Alford plea asserts his innocence but admits there is sufficient evidence to convict him of the offense. See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970). "An 'Alford plea is a variation of a guilty plea,'" and "has 'the same preclusive effect as a guilty plea' for purposes of appeal." Cobbins v. Commonwealth, 53 Va. App. 28, 36, 668 S.E.2d 816, 820 (2008) (first quoting United States v. Morrow, 914 F.2d 608, 611 (4th Cir. 1990); then quoting Perry v. Commonwealth, 33 Va. App. 410, 412, 533 S.E.2d 651, 652 (2000)).

sentencing. Counsel for appellant's co-defendant, Tykare Payne, filed an "Amended Motion to Set Aside Verdict as to the Charge of Robbery." Following a hearing, the trial court denied the motion to set aside.[4] This appeal followed.

## II. ANALYSIS

When considering a challenge to the sufficiency of evidence on appeal, "we review the evidence in the light most favorable to the Commonwealth," the prevailing party at trial, "granting to it all reasonable inferences fairly deducible therefrom." Sierra v. Commonwealth, 59 Va. App. 770, 774, 722 S.E.2d 656, 657 (2012) (quoting Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)). The Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth." Johnson v. Commonwealth, 53 Va. App. 79, 99, 669 S.E.2d 368, 378 (2008) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). Further, "circumstantial evidence may be more compelling and persuasive than direct evidence, and when convincing, it is entitled to as much weight as direct evidence." Booker v. Commonwealth, 61 Va. App. 323, 335-36, 734 S.E.2d 729, 735 (2012) (quoting Bridgeman v. Commonwealth, 3 Va. App. 523, 526, 351 S.E.2d 598, 600 (1986)).

In conducting our inquiry, "the relevant question is, after reviewing the evidence in the light most favorable to the [Commonwealth], whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

---

[4] Although appellant was a named party to the motion, his counsel did not sign the motion. Rule 1:4(c) requires that "[c]ounsel . . . who files a pleading shall sign it . . . ." Further, the motion argued only that the "evidence is insufficient to prove a charge of robbery against Tykaree [sic] Payne." For these reasons, we will not consider whether the trial court erred in denying appellant's motion to set aside his convictions for robbery, attempted carjacking, and conspiracy to commit carjacking, and confine our inquiry to the trial court's denial of appellant's motion to strike.

evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly v.

Commonwealth, 41 Va. App. 250, 257-58, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting

Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  We do not "substitute our judgment for that of

the trier of fact," Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002),

and "will reverse only where the trial court's decision is 'plainly wrong or without evidence to

support it,'" Calloway v. Commonwealth, 62 Va. App. 253, 261, 746 S.E.2d 72, 76 (2013)

(quoting Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 12 (2004)).

Appellant assigns a single error, in three parts.  We address each part in turn.

### A.  Appellant's Participation in the Offenses

Appellant argues that the trial court erred in denying his motion to strike, as the evidence

failed to prove beyond a reasonable doubt that he committed or otherwise aided or abetted

attempted carjacking, robbery, or conspiracy to commit carjacking.

"Carjacking" is defined, in relevant part, as

> the intentional seizure or seizure of control of a motor vehicle of
> another with intent to permanently or temporarily deprive another
> in possession or control of the vehicle of that possession or control
> by means of . . . striking or beating, or by other violence to the
> person, or by assault or otherwise putting a person in fear of
> serious bodily harm . . . .

Code § 18.2-58.1(B).  Thus, conviction for carjacking requires proof beyond a reasonable doubt

that "the victim was in possession or control of a motor vehicle," the defendant "intentionally

seized, or seized control of, the vehicle, either temporarily or permanently," and the defendant

"so deprived the victim of possession or control of the vehicle by means of one or more of the

specifically prohibited acts" listed in the statute, including striking, beating, or other acts of

violence.  Hilton v. Commonwealth, 293 Va. 293, 299, 797 S.E.2d 781, 784 (2017).  Under the

plain language of Code § 18.2-58.1, "a perpetrator can commit carjacking without actually

seizing the victim's vehicle, *i.e.*, taking possession of it."  Id.  That is, "a perpetrator can violate

the statute by . . . seizing *control* of the victim's vehicle, *i.e.*, 'exercis[ing] power' over it." Id. (quoting Black's Law Dictionary 403 (10th ed. 2014)). "[P]ossession of the means to exercise dominion or control over an item gives the possessor dominion or control over the item itself," and thus "possession of [a] vehicle's keys place[s] [a defendant] in possession or control of the vehicle." Bell v. Commonwealth, 21 Va. App. 693, 698-99, 467 S.E.2d 289, 291-92 (1996). See also Hilton, 293 Va. at 301, 797 S.E.2d at 785 (holding that after taking the victim's keys at gunpoint the appellant was in control of the victim's vehicle). "[T]he Commonwealth must prove an act of violence against the victim that precedes or is concomitant with the taking of the vehicle from the possession or control of the victim." Bell, 21 Va. App. at 702, 467 S.E.2d at 293.

"An attempt . . . is an unfinished crime and is composed of two elements, the intent to commit the crime and the doing of some direct act toward its consummation, but falling short of the accomplishment of the ultimate design." Velez-Suarez v. Commonwealth, 64 Va. App. 269, 277-78, 767 S.E.2d 715, 719 (2015) (quoting Rogers v. Commonwealth, 55 Va. App. 20, 24-25, 683 S.E.2d 311, 313 (2009)). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances . . . . The state of mind of an alleged offender may be shown by his acts and conduct." Burton v. Commonwealth, 281 Va. 622, 626-27, 708 S.E.2d 892, 894 (2011) (quoting Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)). "[W]here the intent is clearly shown, 'any slight act done in furtherance of this intent will constitute an attempt.'" Ashford v. Commonwealth, 47 Va. App. 676, 682, 626 S.E.2d 464, 467 (2006) (quoting Siquina v. Commonwealth, 28 Va. App. 694, 701, 508 S.E.2d 350, 354 (1998)).

"Robbery is a common law crime in Virginia. It is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by

violence or intimidation.'" Ali v. Commonwealth, 280 Va. 665, 668, 701 S.E.2d 64, 66 (2010) (quoting Durham v. Commonwealth, 214 Va. 166, 168, 198 S.E.2d 603, 605-06 (1973)). The phrase "of the personal property of another, from his person or in his presence" is "broadly construed to include the taking of property from the custody . . . or . . . the constructive possession of . . . another." Price v. Commonwealth, 59 Va. App. 764, 767, 722 S.E.2d 653, 654 (2012) (alterations in original) (quoting Bunch v. Commonwealth, 225 Va. 423, 440, 304 S.E.2d 271, 281 (1983)). "The element of violence need only be slight. '[A]nything which calls out resistance is sufficient.'" Ali, 280 Va. at 668, 701 S.E.2d at 66 (alteration in original) (quoting Maxwell v. Commonwealth, 165 Va. 860, 864, 183 S.E.2d 452, 454 (1936)).

A conspiracy is "an agreement between two or more persons by some concerted action to commit an offense." Chambliss v. Commonwealth, 62 Va. App. 459, 466, 749 S.E.2d 212, 216 (2013) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). "[T]he crime of conspiracy is complete when the parties agree to commit an offense; Virginia does not require proof of an overt act in furtherance of the conspiracy." Id. "[M]ost conspiracies are 'clandestine in nature,'" and "[i]t is a rare case where any 'formal agreement among alleged conspirators' can be established." Johnson v. Commonwealth, 58 Va. App. 625, 636, 712 S.E.2d 751, 756 (2011) (quoting James v. Commonwealth, 53 Va. App. 671, 678, 674 S.E.2d 571, 575 (2009)). Thus, "conspiracy law does not require proof of an 'explicit agreement.'" Id. (quoting Jones v. Commonwealth, 279 Va. 295, 301, 687 S.E.2d 738, 741 (2010)). "A conspiratorial agreement 'often may only be established by circumstantial and indirect evidence including the overt actions of the parties.'" Id. at 636, 712 S.E.2d at 756-57.

Appellant challenges the sufficiency of the evidence to sustain his convictions, contending that the Commonwealth failed to exclude his reasonable hypothesis of innocence that appellant's companions committed the offenses without his participation, aid, or assistance. He

supports this argument with the following: (1) Keddy did not identify appellant as one of the attempted carjackers and remembered only that the person who struggled with him was wearing a white shirt, and appellant was wearing a black shirt when he was apprehended; (2) Keddy described only two participants in the attempted carjacking—the individual who tried to pull him out of his car and struggled with him for possession of his keys, and the person he noticed in his back seat; (3) appellant's admission to police that he was "running cars" simply placed him at the scene of the crime, and did not establish that he participated in the attempted carjacking or shared the criminal intent of the would-be carjackers; and (4) Johnson testified that he alone acted against Keddy without any assistance or participation by appellant.

Appellant's arguments are without merit. Appellant admitted that he was present at the Embassy Suites Hotel on the morning of November 29, 2016, and Johnson's testimony also placed him at the scene. Both appellant and Johnson told police they were at the Embassy Suites "running cars," *i.e.*, stealing items from vehicles. Keddy testified that three men approached his car just before the attempted carjacking, and security camera images showed three men walking past the hotel in the direction of Keddy's car. One individual entered Keddy's car, and a second individual tried to remove Keddy's keys and pull him out of his car. Keddy was then struck in the face. Although the individuals fled when Keddy sounded his horn, by that point, violence had been used against him in an effort to seize his keys and thus deprive him of possession or control of his car. Keddy's cell phone had been present in the center console of his car, but it was missing when he returned to his car after seeking help, even though he locked his car when he went for help immediately after the incident. Shortly thereafter, and only about a mile from the hotel, Officer Marales saw three juvenile males walking together who matched the description he received of the carjacking suspects. They fled when Marales approached them, and when Marales apprehended one of the suspects, Payne, he was in possession of Keddy's cell

phone. The remaining two suspects were seen fleeing together, and when they were apprehended, proved to be appellant and Johnson.

Viewing this evidence in its totality and in the light most favorable to the Commonwealth, it was reasonable for the jury to infer that appellant and his companions intended to seize control of Keddy's car and to deprive him of his possession or control of it through violence. It was also reasonable for the jury to conclude that appellant and his companions committed acts in furtherance of that goal. Thus, it was reasonable for the jury to find that appellant was guilty of attempted carjacking.

Similarly, a rational trier of fact could also have found appellant liable for the robbery of Keddy's cell phone. Both appellant and Johnson stated that they went to the Embassy Suites Hotel to steal items from cars. The jury could reasonably infer from their presence there with larcenous intent, together with the other facts and circumstances discussed above, that appellant and his companions were responsible for the crime of robbery—*i.e.*, that they took, with intent to steal, Keddy's cell phone from his car, in his presence and against his will by violence.

Since a rational trier of fact could have found the elements of attempted carjacking and robbery beyond a reasonable doubt, the trial court did not err in denying appellant's motion to strike.

Appellant also contends that the evidence failed to prove beyond a reasonable doubt that he conspired to commit carjacking. He argues, as above, that his admission to police that he was "running cars" simply placed him at crime scene, and did not prove that he shared the criminal intent of the attempted carjackers. Appellant again relies upon Johnson's testimony that Johnson acted alone in planning and attempting the carjacking.

We find appellant's argument unpersuasive. The jury, as trier of fact, was free to disregard Johnson's testimony that his companions were unaware of his plan to carjack Keddy.

See English v. Commonwealth, 43 Va. App. 370, 371, 598 S.E.2d 322, 323 (2004) ("The trier of fact is not required to accept a [witness'] evidence in its entirety, but is free to believe or disbelieve, in whole or in part, the testimony of any witness." (citations omitted)); Whitt v. Commonwealth, 61 Va. App. 637, 661, 739 S.E.2d 254, 266 (2013) (*en banc*) ("The credibility of the witnesses and the weight accorded [their] evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995))).

Further, conspiracy does not require proof of an explicit, formal agreement, and may be proved "by circumstantial and indirect evidence including the overt actions of the parties." Johnson, 58 Va. App. at 636, 712 S.E.2d at 757 (quoting Jones, 279 Va. at 301, 687 S.E.2d at 741). "The fact that there is no evidence of an actual conversation" between the parties "is not dispositive . . . [for] a conspiracy may be inferred by actions alone." Charity v. Commonwealth, 49 Va. App. 581, 587, 643 S.E.2d 503, 505-06 (2007).

Here, the evidence showed that appellant and at least one of his companions, Zyan Johnson, arrived at the hotel with criminal intent. Together with a third individual, they approached Keddy in his car. One of the individuals entered Keddy's car, another attempted to take Keddy's keys and remove him from the car, and someone struck Keddy in the face. As noted above, these constituted acts in furtherance of carjacking through the use of violence to try to seize control of the car and deprive Keddy of his possession or control of it. When Keddy raised an alarm by sounding his horn, the three individuals fled together and they were seen together a short time later, when they fled from police. See Thomas, 279 Va. at 168, 688 S.E.2d at 240 ("When a suspected person attempts to . . . evade a threatened prosecution, it may be argued that he does so from consciousness of guilt . . . it may become one of a series of circumstances from which guilt may be inferred." (quoting Turman v. Commonwealth, 276 Va.

558, 564, 667 S.E.2d 767, 770 (2008))). When appellant and Johnson then fled the approach of Officer Marales, they initially fled together. Viewing this evidence in its totality and in the light most favorable to the Commonwealth, a rational fact finder could have found that appellant agreed with Johnson and Payne to carjack Keddy, as demonstrated by the overt actions of the three in attempting that offense. See, e.g., Charity, 49 Va. App. at 587, 643 S.E.2d at 505-06 (finding sufficient evidence of conspiracy to commit an escape from a correctional facility where, in the absence of proof of an actual conversation between two inmates, their agreement to attempt an escape was "illustrated by their actions" when they "worked together" to carjack a truck). Thus, the trial court did not err in denying appellant's motion to strike the evidence of conspiracy to commit carjacking.

### B. Conspiracy: Agreement to Commit Robbery

Appellant argues that "with regard to the conspiracy, there was no proof that [appellant] entered into an agreement to commit robbery beforehand and the robbery might have been committed spontaneously." Thus, the trial court erred in denying his motion to strike.

Appellant was charged with conspiracy to commit carjacking and was not charged with conspiracy to commit robbery. To the extent that this portion of appellant's assignment of error seeks to address conspiracy to commit carjacking, since carjacking is a species of robbery, see Pressley v. Commonwealth, 54 Va. App. 380, 385, 679 S.E.2d 551, 554 (2009), we rely on our earlier analysis concluding that the evidence of conspiracy to commit carjacking was sufficient.

### C. Robbery: Taking through the Use of Force, Threat, or Intimidation

With respect to his robbery conviction, appellant also argues that because Keddy was unable to testify about exactly when or how his cell phone disappeared from his car, there was no proof that the taking of the phone was accomplished through the use of force, threat, or intimidation. Thus, the trial court erred in denying his motion to strike.

- 12 -

This argument is unpersuasive. Here, the evidence supports the finding that Keddy's cell phone was in his presence immediately before the attempted carjacking. It also supports the finding that he interposed himself between the carjacker or carjackers and his property that was in the car, including his keys and cell phone, and resisted the efforts to overcome him, but was subject to an assailant's use of violent force. Further, the evidence demonstrates that no one else could have accessed the interior of Keddy's car in the interval between the attempted carjacking and Keddy's return to the car, because the car was locked. The evidence also shows that the phone was no longer in the car when Keddy returned and that it was recovered shortly thereafter from Payne. From this evidence, a rational trier of fact could have found that Keddy's phone was taken from his presence through the use of force, threat, or intimidation and that the elements of robbery had been proven beyond a reasonable doubt.

## III. CONCLUSION

For the foregoing reasons, we conclude the evidence was sufficient to support appellant's convictions for attempted carjacking, conspiracy to commit carjacking, and robbery and thus we affirm the judgment of the trial court.

<u>Affirmed.</u>