COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Powell and Alston
Argued at Chesapeake, Virginia


AROUS JOHN PHILLIPS
                                                          OPINION BY
v.        Record No. 0482-09-1                  JUDGE CLEO E. POWELL
                                                          JULY 13, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

Dianne G. Ringer (Bierowicz & Ringer, P.C., on brief), for
appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General
(William C. Mims, Attorney General, on brief), for appellee.


Arous John Phillips (appellant) appeals from his convictions for felony participation in a

criminal act for the benefit of a criminal street gang that included a juvenile member, in violation

of Code § 18.2-46.2, and for recruitment of a juvenile for membership in a criminal street gang,

in violation of Code § 18.2-46.3.  On appeal, appellant contends the evidence was insufficient to

support the circuit court's determination that a criminal street gang existed within the meaning of

Code §§ 18.2-46.1, 18.2-46.2, and 18.2-46.3.  Further, he contends the evidence was insufficient

to support the circuit court's conclusion that the criminal street gang had at least one juvenile

member or participant at the time appellant participated in criminal street gang activity.  For the

reasons that follow, we affirm appellant's conviction for recruitment of a juvenile for criminal

street gang membership, and we reverse appellant's conviction for felony participation in a

criminal street gang that included a juvenile member.  We remand the case to the circuit court for

a new trial on a charge of gang participation, no greater than a Class 5 felony, if the Commonwealth be so advised.

## I.  BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)).  "[T]his Court must 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 605, 606 (1954) (emphasis omitted)). Moreover, as an appellate court, our examination of the record "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008).  Accordingly, "the appellate court has a duty to examine all the evidence that tends to support the conviction" challenged on appeal.  Id. (citing Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005); Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998); Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998)).

The evidence established that during the summer of 2006, appellant discussed with A.G., who was sixteen years old at the time, A.G.'s potential membership in a gang called "the Bloods."[1]  Shortly thereafter, appellant informed other gang members that A.G. was "a little

---

[1] On appeal, appellant does not dispute that a group of individuals in Portsmouth called themselves "the Bloods" during the relevant time frame; rather he challenges whether the Commonwealth proved that the Bloods were a criminal street gang as defined by Code § 18.2-46.1.  By referring to the Bloods as a "gang" in the background section of this opinion, we are not presupposing the Commonwealth's proof of all of the elements of Code § 18.2-46.1; we are merely acknowledging that a group of individuals in Portsmouth called themselves "the Bloods."

soldier trying to get down," i.e., become a member of the Bloods. For A.G.'s "beating in," or initiation, to the gang, appellant arranged for A.G. to fight another gang member for thirty-one seconds. After A.G. completed the fight, he was considered a member of the Bloods. The Commonwealth argued that appellant's recruitment of A.G. for gang membership was the action that constituted the basis for the prosecution of appellant for recruitment of a juvenile for gang membership and participation in a gang that included a juvenile member.

At trial, A.G. testified that he completed approximately five to six "missions" to gain rank within the Bloods. He testified that appellant sent A.G. on two of these rank-gaining missions—appellant ordered A.G. to complete a residential burglary in 2008, and appellant actually accompanied A.G. and provided him with firearms when A.G. committed an armed robbery of four individuals in 2006.

A number of police officers testified at trial that they observed or interacted with appellant on at least six occasions between August 2006 and August 2008. Often appellant was observed in areas known for "gang activity." Each time, appellant was wearing red or red and black clothing in the company of individuals in similar attire. In some instances, the police described appellant's companions as juveniles. During one encounter, a police officer asked appellant if he was "still involved [with the gangs]," and appellant answered affirmatively.

Detective K. Gavin testified as an "expert in gang culture and specifically on the Bloods." He described the Bloods as a national gang comprised of loosely connected smaller criminal street gangs. He stated that such subsets were located in Portsmouth and that appellant was a member of one. He further testified that the Bloods used the colors red and black to identify themselves and that the Bloods also used hand signals, tattoos, graffiti, beads, and bandanas to indicate gang membership.

In early August 2008, approximately two years after A.G.'s "beating in" to the Bloods, Portsmouth police officers executed a search warrant at a Portsmouth residence. There, the police officers recovered personal papers that bore appellant's name, a red baseball cap, red shorts, and red and black beads. From that residence, the police officers also recovered a Virginia identification card bearing appellant's name and mail addressed to appellant bearing that address. Additionally, the police officers found handwritten papers that Detective Gavin testified were part of the Bloods' "Book of Knowledge." The pages found contained Bloods-related information, which appeared to be similar to that found in a book of "Bloods codes and rules" described by A.G. at trial. Detective Gavin acknowledged that the Bloods' hand signals and other identifying behavior were published in magazines and were not secret.

Detective Gavin testified that a local subset of the Bloods in Portsmouth was involved in street robberies, commercial robberies, burglaries, and narcotics distribution. To support the Commonwealth's evidentiary presentation on the issue of whether the Bloods were a criminal street gang under the Virginia Code, Detective Gavin described three recent convictions of local Blood members.[2] He stated that Kevin Mitchell was a confirmed member of the Bloods who was convicted in September 2007 for a February 2007 malicious wounding, attempted armed burglary, and use of a firearm. Detective Gavin did not provide any testimony regarding whether or not Mitchell was a member of the Bloods during the summer of 2006 or whether Mitchell had committed any crimes prior to his February 2007 offense.

---

[2] In classifying the convicted individuals as members of the Bloods, Detective Gavin described the "state-wide criteria" used to classify individuals as gang members. He stated that if an individual "admits membership in an identified criminal gang as per [Code §] 18.2-46.1 . . . at the time of their arrest, they're automatically classified as a street gang member." An individual may also be identified as a gang member if an individual of proven reliability identifies him as such. Finally, law enforcement officers classify an individual as a criminal gang member if an "individual of unknown reliability" identifies him as a gang member and that identification is corroborated in significant respects.

Detective Gavin also identified M.W. as a confirmed juvenile Bloods member with whom the detective had had personal contact. Through Detective Gavin's testimony, the Commonwealth entered into evidence a September 2008 "Juvenile Trial Order" from the juvenile and domestic relations district court in Portsmouth. The order stated that M.W. was guilty of robbery, possession of a firearm in the commission of a crime, possession of a firearm by a minor, and gang participation. The order did not state the pertinent offense dates.

Finally, Detective Gavin testified about Al-Tarik Sumner, whom the detective described as a "confirmed" Bloods member. The circuit court admitted into evidence Sumner's April 2006 conviction order for second-degree murder and use of a firearm in the commission of a felony. These crimes occurred in July 2005.

Additionally, Detective Gavin described his personal interactions with appellant prior to his arrest for the instant charges in 2008. He stated that appellant had tattoos similar to those sported by other Bloods gang members, that appellant flashed Bloods gang signs in public, and that he wore red and black clothing. Detective Gavin further testified that after the police executed the search warrant at appellant's residence, the police arrested appellant, and Detective Gavin interrogated him. In response to the detective's questions, appellant stated that he "is or was a member of the Bounty Hunter Bloods," the Portsmouth subset of the national Bloods gang. He further stated that he was once active in the gang, but that he did not "mess with that stuff anymore." He further acknowledged that he had once recruited individuals for gang membership, but that he no longer did so. Finally, he stated that he never ordered anyone to perform a rank-gaining mission.

In summary, based on the state-wide criteria, and the facts and circumstances associated with appellant's activities and confederates, Detective Gavin classified appellant as a "confirmed gang member."

In a bench trial, the circuit court found appellant guilty of felony recruitment of a juvenile for participation or membership in a criminal street gang, in violation of Code § 18.2-46.3, which states in pertinent part:

> Any person who solicits, invites, recruits, encourages or otherwise causes or attempts to cause another to actively participate in or become a member of what he knows to be a criminal street gang is guilty of a Class 1 misdemeanor. Any person age 18 years or older who solicits, invites, recruits, encourages or otherwise causes or attempts to cause a juvenile to actively participate in or become a member of what he knows to be a criminal street gang is guilty of a Class 6 felony.

The circuit court also found appellant guilty of criminal street gang participation, with the knowledge that a juvenile belongs to the gang, in violation of Code § 18.2-46.2(A), which states:

> Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony. However, if such participant in or member of a criminal street gang is age eighteen years or older and knows or has reason to know that such criminal street gang also includes a juvenile member or participant, he shall be guilty of a Class 4 felony.

In making its rulings, the circuit court found that appellant knew or had reason to know that A.G. was a juvenile. Further, it found that appellant's arrangement of the thirty-one-second fight and the subsequent burglaries and robbery were the acts that constituted the basis of the convictions.

## II. ANALYSIS

On review of a challenge to the sufficiency of the evidence, this Court "will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden, 275 Va. at 148, 654 S.E.2d at 586. Furthermore, we do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "'Instead, the relevant question is whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

A.  The Existence of a Criminal Street Gang under Code § 18.2-46.1

At trial, appellant's counsel acknowledged that the Commonwealth proved the first and second prongs of the Code provision.[3]  However, he argued that the evidence was insufficient to prove that the members of the Bloods "individually or collectively . . . engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction." Code § 18.2-46.1.  His argument is two-fold:  first, he contends that although Detective Gavin testified extensively about the Bloods' activities and social structure, he did not actually show that the Bloods were in existence during the summer of 2006, when the alleged offenses occurred; and second, he asserts that the prior conviction orders of Mitchell, M.W., and Sumner do not effectively establish that any of the men were gang members at the time they committed the offenses.  Further, appellant argues that none of the conviction orders state offense dates that occurred in a time period relevant to a finding that the gang was in existence during the summer of 2006.

The language used by the General Assembly clearly requires that the evidence against a defendant charged with the crimes of recruitment of a juvenile into a criminal street gang and gang participation establish the existence of a criminal street gang.  Code §§ 18.2-46.2, -46.3.  A "criminal street gang"

> means any ongoing organization, association, or group of three or
> more persons, whether formal or informal, (i) which has as one of

---

[3] A review of the record supports this concession.  Appellant did not challenge that he belonged to a "group of three or more persons" known as the Bloods, which boasted as one of its primary objectives the commission of criminal activities.

its primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name or identifying sign or symbol; and (iii) whose members individually or collectively *have engaged* in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more *predicate* acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction.

Code § 18.2-46.1 (emphases added).

Furthermore, Code § 18.2-46.1 defines a "predicate criminal act," as described in the third prong of the criminal street gang definition, as

(i) an act of violence; (ii) any violation of § 18.2-42, 18.2-46.3, 18.2-51, 18.2-51.1, 18.2-52, 18.2-53, 18.2-53.1, 18.2-55, 18.2-56.1, 18.2-57, 18.2-57.2, 18.2-59, 18.2-83, 18.2-121, 18.2-127, 18.2-128, 18.2-137, 18.2-138, 18.2-146, 18.2-147, subsection H, H1 or H2 of § 18.2-248, § 18.2-248.01, 18.2-255, 18.2-255.2, 18.2-282.1, 18.2-286.1, 18.2-287.4, 18.2-308.1, or 18.2-356; (iii) a second or subsequent felony violation of subsection C of § 18.2-248 or of § 18.2-248.1; (iv) any violation of a local ordinance adopted pursuant to § 15.2-1812.2; or (v) any substantially similar offense under the laws of another state or territory of the United States, the District of Columbia, or the United States.

Because the language of these code sections is free from ambiguity, the plain meaning controls. See Portsmouth v. Chesapeake, 205 Va. 259, 269, 136 S.E.2d 817, 825 (1969). "'The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction.'" Gilliam v. Commonwealth, 21 Va. App. 519, 522-23, 465 S.E.2d 592, 594 (1996) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)).

In its definition of a criminal street gang, the General Assembly mandated that, *inter alia*, the organization at issue "have engaged" in at least two "predicate acts." Code § 18.2-46.1. "Predicate" means "to base or establish (a statement or action, for example)." The American Heritage Dictionary of the English Language 1382 (4th ed. 2006); cf. Black's Law Dictionary 1112 (8th ed. 2004) (defining "predicate offense" as "[a]n earlier offense that can be used to

enhance a sentence levied for a later conviction"). "Base" is defined, *inter alia*, as a) "[a] supporting part or layer; a foundation[;]" b) "a basic or underlying element; infrastructure[;]" c) "[a] fundamental ingredient; a chief constituent[;]" and d) "[t]he fact, observation, or premise from which a reasoning process is begun." The American Heritage Dictionary, supra, at 148. Similarly, "establish" means "to bring about; generate." Id. at 609. The meaning of the words used to define "predicate" all require a sequential process where the "predicate" event occurs *before* a subsequent event. Moreover, the use of the past tense of "engage" in the statute indicates that the General Assembly contemplated that the acts defining the existence of the gang would have occurred prior to the offense for which the individual was being charged. Thus, given the definition of "predicate" and the use of the past tense of "engage," the plain meaning of the statute necessarily requires that the criminal acts establishing the existence of the criminal street gang occur *before*, not *contemporaneously* with, the offense for which the existence of the criminal street gang is required.[4] As such, appellant's act of recruiting A.G. into the Bloods cannot serve as an offense upon which the existence of the gang is predicated.

---

[4] The concurring opinion states that although "[b]oth Code §§ 18.2-46.2 and 18.2-46.3 require the Commonwealth to prove the existence of a criminal street gang. [They do not] create a sequential fact-finding process in which the circuit court must first find that a criminal street crime exists *prior* to a determination of whether the criminal act that is the subject of the prosecution occurred." We do not believe that this conclusion is supported by the plain meaning of the words used by the General Assembly in defining a criminal street gang. Simply because the act of recruiting a juvenile into a street gang may be one of the acts that supports a determination that the gang exists does not, as the concurring opinion contends, mean that one single act of recruitment of a juvenile may be used to prove *both* the existence of the gang and a separate offense requiring the existence of a gang. Were that so, the subsequent conviction would necessarily provide one of the predicate acts required by the General Assembly's definition of "criminal street gang" and the definition's requirement that two acts be proven would be rendered moot. As the concurring opinion correctly states, we "must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" Rasmussen v. Commonwealth, 31 Va. App. 233, 238, 522 S.E.2d 401, 403 (1999) (quoting Frazier v. Commonwealth, 27 Va. App. 131, 135, 497 S.E.2d 879, 881 (1998)). Thus, we disagree with the concurring opinion's conclusion that under the facts of this case appellant's recruitment of A.G. into the Bloods may be used as one of

- 9 -

In examining the record for evidence of a predicate offense, we agree with appellant's contention that Detective Gavin and the other police officers' testimony, which described their observations of Bloods' activity occurring between August 2006 and August 2008, does not adequately satisfy the third prong of the criminal street gang definition. To prove both the specific gang participation offense at issue herein and the recruitment of a juvenile into a gang offense, the Commonwealth had to prove that *at the time* appellant committed the offense, a criminal street gang existed. See Code § 18.2-46.2(A) ("Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony."); Code § 18.2-46.3 ("Any person age 18 years or older who solicits, invites, recruits, encourages or otherwise causes or attempts to cause a juvenile to actively participate in or become a member of what he knows to be a criminal street gang is guilty of a Class 6 felony.").[5] The police officers' testimony regarding the *post*-August 2006 alleged gang-related activity is not sufficient evidence that the Bloods had committed the

_____

the predicate criminal acts to establish that the Bloods were a criminal street gang during the relevant time period.

[5] In making its ruling, the trial court held that A.G.'s rank-gaining missions (the armed robbery and the burglary) that occurred after the thirty-one-second fight were the predicate offenses the court considered when finding that the Bloods were a criminal street gang. Because these crimes occurred after the thirty-one-second fight, which was the action that was the basis for both the gang participation charge and the juvenile recruitment charge, it was improper for the trial court to consider them in determining whether the Bloods were a criminal street gang at the time of the offenses for which appellant was convicted. However, "where the correct conclusion has been reached but the wrong reason given," an appellate court may "sustain the result and assign the right ground." Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963) (citing Richmond v. Grand Lodge, 162 Va. 471, 475, 174 S.E. 846, 847 (1934); Hogg v. Plant, 145 Va. 175, 182, 133 S.E. 759, 761 (1926)). Thus, this Court may examine whether other acts committed by appellant or Bloods members constituted predicate criminal acts under Code § 18.2-46.1.

requisite two predicate criminal acts at the time of A.G.'s recruitment, thereby qualifying as a criminal street gang under Code § 18.2-46.1.

We find that the conviction order for Al-Tarik Sumner does qualify as a predicate criminal act that establishes the existence of a criminal street gang. According to Detective Gavin's testimony, Sumner was a confirmed gang member when he committed second-degree murder in 2005. Because Sumner's offense occurred prior to appellant's recruitment of A.G., it is appropriate to consider Sumner's conviction as the "act of violence"[6] that constituted a predicate offense in the determination of whether the Bloods constituted a criminal street gang during the summer of 2006. Under Code § 18.2-46.1, however, Sumner's additional conviction for use of a firearm during the commission of a felony may not constitute the second predicate act required by the statute, as they were part of a common transaction. Thus, we must look to the record for additional evidence of a second predicate criminal act prior to appellant's recruitment of A.G. in August of 2006.

However, the conviction orders for Kevin Mitchell and M.W. are not proof that at the time of A.G.'s recruitment, Bloods members had committed the two predicate criminal acts necessary to classify the Bloods as a criminal street gang. Although Detective Gavin testified that Mitchell was a confirmed gang member and that he committed the February 2007 offenses while he was a gang member, there was no testimony regarding when Mitchell joined the Bloods and whether he committed any crimes prior to 2007.

M.W.'s conviction order also failed to establish that members of the Bloods had committed the predicate criminal acts at the time of A.G.'s recruitment during the summer of 2006. The September 2008 juvenile trial order convicting M.W. of robbery and gang

---

[6] Code § 18.2-46.1 defines an act of violence as any of the "felony offenses described in Code § 19.2-297.1." Second-degree murder is one of these offenses. Code § 19.2-297.1(A)(a).

participation does not include the dates of M.W.'s offenses. Without these dates, there is insufficient evidence to show that they occurred prior to August 2006. Logically, because Mitchell's and M.W.'s crimes occurred *after* appellant's offenses, they do not show that the Bloods were a criminal street gang *at the time of* appellant's offenses.

That said, the record provides ample evidence from which the trial court could have found that members of a group known as the Bloods engaged in two or more predicate acts prior to August 2006, at least one of which was violent. Detective Gavin, an expert in gang culture particularly concerning the Bloods, testified that he has worked with gang crimes since 1994 and started the Gang and Intelligence Unit of the Portsmouth Police Department in 2005. He has been acquainted with the Bloods, and more specifically, with appellant as a member of the Bloods since 2005. Appellant admitted to Detective Gavin that he recruited members for participation in the Bloods, one of the statutorily enumerated predicate acts, in the past. A.G. corroborated appellant's testimony. According to A.G., at the time of his initiation in 2006, there were two sets of Bloods in the Cradock area; appellant ran one of these sets. At the time of appellant's trial, Detective Gavin indicated that there were 150 identified Bloods in the Portsmouth area.

Similarly, A.G.'s testimony provides evidence that supports the trial court's findings. A.G. testified that at the time he was initiated, appellant was a superior. A.G.'s testimony as to appellant's rank is corroborated by appellant's own testimony that he was a superior. According to Detective Gavin's testimony, a superior is a rank second only to an O.G. or general. The only way that appellant could have attained the rank of superior was by completing missions defined as participating in activities like burglaries, robberies, and assaults. Indeed, Detective Gavin testified that "Bloods are very commonly involved in street robberies, commercial robberies,

[and] burglaries . . . ." Therefore, the evidence demonstrates that appellant, as a member of the gang, had engaged in these activities prior to appellant's recruiting A.G. to join the gang.

The record provides ample evidence of the criminal activities, including at least one violent act, from which the trial court could infer that the requisite predicate acts to establish a criminal street gang occurred prior to appellant recruiting A.G. to join the Bloods. Therefore, we affirm appellant's conviction for recruitment of a juvenile for membership in a criminal street gang because the evidence proves that a criminal street gang existed prior to and independent of appellant's recruitment of A.G.

### B. The Existence of a Criminal Street Gang Including a Juvenile Member or Participant at the Time Appellant Participated in Gang Activity

Appellant also argues the evidence was insufficient to prove that the criminal street gang included a juvenile member or participant when he participated in the alleged gang activity. Specifically, he contends that because the Commonwealth alleged that the gang activity at issue here was the recruitment of A.G., it cannot simultaneously use appellant's recruitment of A.G. to support its position that appellant attempted to recruit a juvenile into a gang having a juvenile member. Essentially, appellant asserts that by alleging that the gang activity in which appellant participated was the recruitment of A.G., the Commonwealth could not also argue that the juvenile member in the gang at the time of the gang activity was A.G., thereby using A.G. to satisfy the requirement that existence of a juvenile member. We agree.

Code § 18.2-46.2(A) states that anyone participating in a criminal street gang shall be guilty of a Class 5 felony. However, if an individual participates in a criminal street gang that contains a juvenile, the punishment is enhanced to a Class 4 felony. Code § 18.2-46.2(A).

At trial, the circuit court discounted the police officers' testimony that appellant was often seen in the company of individuals wearing red and black clothing and paraphernalia who appeared to be juveniles. The circuit court found that the officers' testimony did not prove that

- 13 -

these juveniles were gang members. The circuit court's essential finding was that wearing the Bloods-favored colors did not automatically constitute proof of membership in that group.[7] This factual finding is not plainly wrong or without evidence to support it.

The circuit court based its finding that the Bloods were a criminal street gang that included a juvenile by finding that A.G., the recruited juvenile, was a member of the gang when he participated in the "beating in." We disagree with this legal conclusion. The testimony at trial indicated that A.G. was not a member of the Bloods until *after* he participated in the "beating in." Logically, the "recruitment activity" performed by appellant ceased at the time A.G. became an actual member of the Bloods gang. Therefore, the circuit court's conclusion that A.G. was a member of the Bloods during the recruitment process is not supported by the evidence.

### III. CONCLUSION

For these reasons, we affirm appellant's conviction for recruitment of a juvenile for membership in a criminal street gang, and we reverse appellant's conviction for felony participation in criminal activity for the benefit of a criminal street gang that includes a juvenile, a Class 4 felony. We remand the case to the circuit court for appellant to be tried on the charge of participation in criminal activity for the benefit of a criminal street gang as an offense no greater than a Class 5 felony, if the Commonwealth be so advised. See Rhodes v. Commonwealth, 238 Va. 480, 487-88, 384 S.E.2d 95, 99 (1989) (vacating a defendant's first-degree murder conviction and remanding "to the trial court with instructions that the defendant be retried for no offense greater than second degree murder").

Affirmed in part, reversed in part, and remanded.

---

[7] Specifically, the trial court stated, "I don't know whether [the juveniles] were gang members or not. . . . They could have been want-to-be's, all dressed up for a costume party, for all I know."

- 14 -

Alston, J., concurring.

Despite the unfortunately pervasive presence of gangs in Virginia, there is a dearth of case law examining the code sections prohibiting criminal activities associated with gang membership. As such, this case presents questions of first impression to this Court, and while I concur in the majority's conclusion that there was sufficient evidence to show a criminal street gang existed, I write separately because I disagree with the narrowness of the majority's rationale. Specifically, I disagree with the majority's limited interpretation of Code § 18.2-46.1, and in finding sufficient evidence of a street gang, I would rely on evidence additional to the evidence considered by the majority.

The majority holds that pursuant to Code § 18.2-46.1 and the rules of statutory construction, "the criminal acts establishing the existence of the criminal street gang [must] occur *before*, not *contemporaneously* with, the offense for which the existence of the criminal street gang is required." Supra at 9 (emphasis in original). I respectfully disagree and would hold that appellant's recruitment of A.G. may constitute *both* one of the two predicate criminal acts establishing the Bloods as a criminal street gang *and* the underlying action that serves as the basis of the violations of Code §§ 18.2-46.2 and 18.2-46.3. I do not believe the language of the relevant statutes precludes this holding.

Both Code §§ 18.2-46.2 and 18.2-46.3 require the Commonwealth to prove the existence of a criminal street gang. Contrary to the majority's holding, I do not believe these code sections create a sequential fact-finding process in which the circuit court must first find that a criminal street crime exists *prior* to a determination of whether the criminal act that is the subject of the prosecution occurred. I would suggest that the finder of fact is authorized to look at all of the circumstances presented at the time of the offense which formed the basis of the criminal charge, and then if that offense is defined by Code § 18.2-46.1 as one of the predicate acts that proves

- 15 -

the existence of a criminal street gang, it may prove both the existence of the criminal street gang and the criminal act that is the subject of the prosecution.

To support this interpretation, I note that Code § 18.2-46.1 provides that a violation of Code § 18.2-46.3, which prohibits the recruitment of individuals for membership in a street gang may be considered a predicate criminal act in the determination of whether a street gang exists. This Court "must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" Rasmussen v. Commonwealth, 31 Va. App. 233, 238, 522 S.E.2d 401, 403 (1999) (quoting Frazier v. Commonwealth, 27 Va. App. 131, 135, 497 S.E.2d 879, 881 (1998)). "If the several provisions of a statute suggest a potential conflict or inconsistency, we construe those provisions so as to reconcile them and to give full effect to the expressed legislative intent." Mejia v. Commonwealth, 23 Va. App. 173, 176-77, 474 S.E.2d 866, 868 (1996) (*en banc*). By mandating that the recruitment of an individual to a criminal street gang is one factor that actually proves the existence of a criminal street gang, the General Assembly authorized finders of fact to engage in an analysis of the totality of the circumstances, rather than a sequential fact-finding process. The term "recruitment" by general definition would seem to suggest the existence of a street gang, and yet, the framework of the statute recognizes that proof of the act of recruitment may constitute one of the elements proving the existence of a street gang. In my view, the General Assembly's proscription of recruitment for gang membership reflects the legislature's recognition of the insidious nature of the gang culture. Accordingly, the General Assembly criminalized not only the illegal acts associated with participation in a criminal street gang, but also prohibited the recruitment of individuals for these kinds of criminal enterprises.

Given the analytical framework suggested by the General Assembly's decision to allow a violation of Code § 18.2-46.3 to be a predicate act proving the existence of a criminal street

gang, I would find that appellant's recruitment of A.G. for the Bloods may be one of the predicate criminal acts that established the Bloods as a criminal street gang.

I agree with the majority's judgment that the conviction of Al-Tarik Sumner constituted a predicate criminal act pursuant to Code § 18.2-46.1 that established the existence of a criminal street gang. Furthermore, I concur in the majority's judgment that Detective Gavin's and A.G.'s testimony of the pre-2006 criminal activity of the Bloods also proved the Bloods had committed the predicate criminal acts required by Code § 18.2-46.1. Accordingly, I concur in the majority holding that the Bloods were a criminal street gang at the time appellant recruited A.G., while I disagree with the majority's limited rationale in reaching this conclusion. I further concur in the majority's judgment to reverse appellant's conviction for felony participation in a street gang that includes a juvenile and remand the case to the circuit court for trial on the charge of Class 5 felony participation in a street gang, if the Commonwealth be so advised.